2017 PA Super 115

| VALERIE HUYETT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| DOUG'S FAMILY PHARMACY | |
| | No. 294 MDA 2016 |

Appeal from the Judgment Entered February 5, 2016
In the Court of Common Pleas of Berks County
Civil Division at No(s): 08-4706

BEFORE:  BOWES, OLSON AND STABILE, JJ.

OPINION BY BOWES, J.:                              **FILED APRIL 20, 2017**

This matter comes before this panel following a prior decision vacating a judgment and remanding to the trial court for its application of the proper legal standard to determine whether to award attorney fees pursuant to § 962(c.2) of the Pennsylvania Human Relations Act (the "PHRA"), 43 P.S. § 951 *et seq.*. **See Huyett v. Doug's Family Pharm.**, 122 A.3d 1136 (Pa.Super. 2015) (unpublished memorandum).  Valerie Huyett, the prevailing party below, renews her challenge to the trial court's denial of attorney fees.  After careful review, we affirm.

We glean the relevant facts from our review of the record.  Valerie Huyett, a 38-year-old married mother of two young children, worked for eleven years at Doug's Family Pharmacy as a pharmacy technician.  She

received pay raises annually. Douglas Hess was the owner/operator of the Pharmacy, and his wife, Lisa Hess, assisted him in running the business.

On August 24, 2006, Ms. Huyett was diagnosed with Hodgkins lymphoma, a form of cancer. She communicated that diagnosis to her immediate supervisor, Stephanie Mitchell, a pharmacist. Four days later, on August 30, 2006, she received a telephone call from Mr. Hess. According to Ms. Huyett, Mr. Hess told her that he was terminating her employment because he could not deal with the scheduling issues related to her treatments. He subsequently proposed that she sign a formal resignation, and in return he would not contest her collection of unemployment compensation benefits, he would pay her for three weeks of vacation, an additional one week's pay, and two sick days. N.T. Trial, 10/10/12, at 225. When she refused to sign the resignation, he opposed her receipt of unemployment compensation benefits. Nonetheless, she was awarded unemployment.

Ms. Mitchell provided critical evidence on Ms. Huyett's behalf. She testified that she started at Doug's Family Pharmacy in September 2005 as a part-time pharmacist, and was a full-time employee from January 2006 to May 2007. She was impressed with Ms. Huyett and described her as "one of the best technicians that I ever worked with." N.T., 10/11/12, at 474.

Ms. Mitchell verified that, prior to receiving the cancer diagnosis, Ms. Huyett had complained of frequent sore throats and she had a visible,

palpable lump on her throat. Ms. Mitchell and Mrs. Hess had actually touched the lump. On one occasion prior to August 2006, Ms. Mitchell recalled that Ms. Huyett left work to go to an urgent care center as she was having trouble swallowing. According to Ms. Mitchell, both Mr. and Mrs. Hess were aware that Ms. Huyett was scheduled to undergo a biopsy and she personally discussed with them the possibility that Ms. Huyett had cancer.

Ms. Huyett telephoned Ms. Mitchell on August 24, 2006, and informed her that she had Hodgkins lymphoma. Ms. Mitchell told her she did not have to come to work that day, but Ms. Huyett insisted on working. *Id*. at 485. Ms. Huyett did not come to work on August 30, 2006, however, because she had been fired the night before. Ms. Mitchell mentioned to Mr. Hess that day that she could not believe that Ms. Huyett no longer worked there and that she had been diagnosed with cancer. *Id*. at 493. Mr. Hess responded that her termination was best, both for him and for Ms. Huyett, as "she could go out and collect unemployment. She doesn't have to worry about showing up for work, she could be at home going through her treatments, she could collect her unemployment check and he doesn't have to worry about getting coverage for work because of -- when she is calling out sick with her treatments." *Id*. He called it a "win/win situation." *Id*. When Ms. Huyett recovered, Mr. Hess would "hire her back." *Id*. Mr. Hess did not disparage Ms. Huyett or her work performance.

Ms. Mitchell testified that approximately one month after Ms. Huyatt's termination, she observed Mrs. Hess walking around with a clipboard making a list of mistakes Ms. Huyett had made. Mrs. Hess questioned Ms. Mitchell and the other employees about what they had observed and noted their responses.

Mr. Hess justified the firing based on Ms. Huyett's declining work performance. He told the jury that, for the first nine years of her employment, Ms. Huyett was an excellent employee. During the final two years, however, her performance declined. She wore inappropriate attire to work and was habitually late. He also provided examples of mistakes made by Ms. Huyett and instances where she gave inappropriate advice to customers. Some of these incidents were confirmed by Mrs. Hess and by Emily O'Neill, an employee who worked at the Pharmacy during the relevant period. Ms. Huyett disagreed with their accounts of her work performance.

At trial, Ms. Mitchell disputed that Ms. Huyett arrived to work late on the day of her diagnosis, or that she was tardy and appeared hung over on August 28, 2006. She was confronted on cross-examination with an email that purported to be from her account and that was critical of Ms. Huyett's performance. Ms. Mitchell denied that she authored the entire email and she posited that someone else had added the paragraphs that disparaged Ms. Huyett. Ms. Mitchell subsequently left her employment at Doug's Pharmacy and started working full-time at CVS.

It was Ms. Huyett's contention that she was fired due to her disability and she claimed an economic loss of $18,894.92. At trial, Ms. Huyett presented her treating oncologist, Daniel L. Foreman, M.D., who opined that, she "suffered physical and mental impairment affecting one or more of her major life activities as a result of her diagnosis and treatment." N.T., 10/9/12, at 58. However, her treatment did not affect her ability to work as a pharmacy technician. *Id*. at 59. She was capable of performing those duties "without assistance, adjustment, or accommodation." *Id*. at 60. The administration of her chemotherapy could be arranged to accommodate her work schedule. *Id*.

In support of his position that Ms. Huyett's termination was motivated by her inadequate work performance rather than discrimination, Mr. Hess also offered the testimony of his attorney, J. Kitridge Fegley. The attorney confirmed that Mr. and Mrs. Hess mentioned to him in early August 2006 that they intended to terminate an eleven-year employee when they returned from their vacation. After Ms. Huyett was diagnosed with cancer just weeks later, they sought his legal advice about terminating Ms. Huyett in light of the diagnosis.

The jury returned a verdict in favor of Ms. Huyett and against Doug's Family Pharmacy. It awarded damages for economic loss in the full amount sought and $2,500.00 in non-economic damages. As the prevailing plaintiff, Ms. Huyett petitioned for attorney fees totaling $106,429.30 pursuant to §

962(c.2) of the PHRA. The trial court denied attorney fees because it did not believe the jury's verdict was supported by the evidence as it "did not and does not find the testimony of Stephanie Mitchell to be credible." Order, 1/17/14, at 1-2. Doug's Family Pharmacy filed a motion for post-trial relief arguing that the jury's verdict was not supported by the evidence. The motion was denied.

Ms. Huyett appealed to this Court and alleged, *inter alia*, that the trial court exceeded the permissible scope of its discretion and usurped the jury's credibility determinations when it did not find Stephanie Mitchell's testimony credible. This Court found that the trial court misapplied the law, vacated the order, and remanded for the trial court to apply the proper legal standard in determining whether Ms. Huyett was entitled to attorney fees. The trial court was directed to weigh the evidence in accord with our Supreme Court's decision in **Hoy v. Angelone**, 720 A.2d 745 (Pa. 1998). Doug's Family Pharmacy's petition for allowance of appeal to the Supreme Court was denied. **See Huyett v. Doug's Family Pharm.**, 129 A.3d 1243 (Pa. 2015) (unpublished decision).

Upon remand, the trial court weighed the evidence presented at trial to determine whether Doug's Family Pharmacy had engaged in an unlawful discriminatory practice in violation of the PHRA. It concluded that the evidence was "weak" and did not support a finding of a violation, and denied attorney fees by order entered February 5, 2016.

Ms. Huyett filed the within appeal and presents three questions for our review:

A. Did the lower court err on Remand from this Court in its February 5, 2016 Judgment and Order denying Appellant's Motion for Attorneys' Fees and Litigation Costs when the trial court – despite denying Appellee motion for post trial relief – held that the jury's verdict against the Appellee was not supported by the evidence?

B. Did the lower court err on Remand from this Court in its February 5, 2016 Judgment and Order denying Appellant's Motion for Attorneys' Fees and Litigation Costs, insofar as the lower court abrogated remedial intent of the anti-discrimination provisions of the PHRA when it denied Appellant the opportunity to be "made whole" for injuries she suffered as a result of Appellee's unlawful discrimination?

C. Did the lower court err on Remand from this Court in its February 5, 2016 Judgment and Order denying Appellant's Motion for Attorneys' Fees and Litigation Costs after she prevailed in a jury trial on her PHRA claim when the lower court, which was not the fact-finder at trial, usurped the jury's function in order to base its denial of Appellant's post-trial motion for fees on its unilateral findings on issues of fact and credibility, and when the lower court distorted the meaning of Appellant's recovery to err in concluding that the jury's award was "modest."

Appellant's brief at 3-4.

Ms. Huyett's three issues challenge the propriety of the trial court's denial of attorney fees and costs under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq*. In support thereof, Ms. Huyett advances numerous arguments, which we will address in the order that facilitates our disposition.

The statutory provision in the PHRA that authorizes an award of attorney fees to the prevailing plaintiff is 43 P.S. § 962(c.2):

> If, after a trial held pursuant to subsection (c), the court of common pleas finds that a defendant engaged in or is engaging in any unlawful discriminatory practice as defined in this act, the court **may** award attorney fees and costs to the prevailing plaintiff.

43 P.S. § 962(c.2) (emphasis supplied).[1]

"To the extent that the issue before us is a question of statutory interpretation, . . . . our scope of review is plenary and the standard of review is de novo." *Samuel-Bassett v. Kia Motors Am., Inc*., 34 A.3d 1, (Pa. 2011); *Sayler v. Skutches*, 40 A.3d 135 (Pa.Super. 2012). (citations omitted). In reviewing the trial court's determination under the PHRA, we may not reverse unless the trial court committed an abuse of discretion. *Hoy v. Angelone*, *supra* at 752. "[A]n abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Id*. (quoting *Paden v. Baker Concrete Construction, Inc.*, 658 A.2d 341, 343 (Pa. 1995)).

---

[1] The PHRA also authorizes the court to award attorney fees and costs to a prevailing defendant upon a showing that the complaint was brought in bad faith. *See* 43 P.S. § 962 (c.3)

The policy of making the plaintiff whole is a recurring theme underlying all of Ms. Huyett's arguments. She contends that since the PHRA is a remedial statute, individuals with disabilities have a right to be made whole. According to Ms. Huyett, the PHRA, specifically § 962(c)(3), mandates that the court order affirmative remedies that will effectuate that intent.[2] She contends that attorney fees, which are authorized under § 962(c.2), are affirmative remedies and implicitly mandatory where the plaintiff prevails under the PHRA.

We note preliminarily that attorney fees are not identified in § 962(c)(3)'s remedial measures. Furthermore, while reinstatement or hiring, and back pay are remedial measures for purpose of the PHRA, punitive damages are not. *Hoy*, *supra* at 749. The legislature addressed attorney fees in a separate subsection of the statute and provided that they "may" be awarded, not that they "shall" be awarded. Our High Court expressly

_____

[2] 43 P.S. § 962(c)(3) (emphasis added) provides:

> If the court finds that the respondent has engaged in or is engaging in an unlawful discriminatory practice charged in the complaint, the court **shall** enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employes, granting of back pay, or any other legal or equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than three years prior to the filing of a complaint charging violations of this act.

rejected the notion in *Hoy* that § 962(c.2) of the PHRA mandated the award of attorney fees and costs to a prevailing plaintiff. The Court reasoned that the "term 'may' signals the legislature's intention to rest the award of counsel fees and costs within the discretion of the trial court." *Hoy*, *supra* at 751. The Court found this interpretation consistent with the Statutory Construction Act, 1 Pa.C.S. § 1921(b), and its *proviso* that unambiguous terms should not be disregarded in favor of the spirit of legislation.

In reaching its conclusion, the Court declined to be bound by the interpretation of the analogous federal provision in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, which has been construed as presumptively entitling a prevailing plaintiff to counsel fees and costs unless special circumstances existed that justified no award. *See Newman v. Piggie Park Enterprises*, 390 U.S. 400 (1969). The *Hoy* Court concluded that an award of counsel fees and costs under the PHRA was neither mandatory nor presumptive, but fell within the sound discretion of the trial court. The determination cannot be reversed unless the trial court committed an abuse of discretion.

Ms. Huyett's reliance upon *Logan v. Marks*, 704 A.2d 671, 673 (Pa.Super. 1997) (and federal cases cited therein), for the proposition that "the prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust[,]" is misplaced. The attorney fee determination in *Logan* was governed by the Civil Rights

Attorney's Fees Awards Act of 1976, rather than the PHRA. As the **Hoy** Court noted when it rejected the federal courts' interpretation of an analogous provision, we are not bound by federal law in construing our statutes.

Ms. Huyett also relies upon **Krebs v. United Ref. Co.**, 893 A.2d 776 (Pa.Super. 2006), a case decided under the Storage Tank and Spill Prevention Act ("STSPA"), in support of her claim of entitlement to attorney fees under a remedial statute such as the PHRA. The counsel fee provision in that statute contained the following language:

> (f) FEES AND COSTS.— The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.
> . . . .

35 P.S. § 6021.1305.

We held in **Krebs** that, generally "where the General Assembly has departed from the "American Rule" (where each party is responsible for his or her own attorney fees and costs), by providing a fee-shifting remedy in a remedial statute, the trial court's discretionary award or denial of attorneys' fees must be made in a manner consistent with the aims and purposes of that statute." **Krebs** at 788. In **Krebs**, we relied upon **Hoy** in interpreting the use of the term "may" as discretionary. We noted further that the STSPA did not specifically define when an award of attorney fees and costs would be appropriate or how to calculate them, and there was no controlling

- 11 -

case law. We looked to the legislative intent as discerned through statutory interpretation and similar legislation, and construed the statute liberally to effectuate its purpose.

Ms. Huyett cites **Krebs** for the broad proposition that where a remedial statute is involved, the trial court's discretion must be exercised "within the framework of the legislative purpose behind the enactment of the fee-shifting provision." **Krebs**, **supra** at 788. Therein, we reversed the trial court's denial of almost $300,000 in counsel fees to the successful plaintiff because the court impermissibly tied the recovery of fees to the relative size of the damage award. Ms. Huyett also directs our attention to **Krassnoski v. Rosey**, 684 A.2d 635, 637-38 (Pa.Super. 1996), where we affirmed the trial court's award of attorney fees under the Protection from Abuse Act even though the attorney prosecuted the action without charge, noting the deterrent effect of counsel fee awards upon a defendant.

However, in the present case, as distinguished from **Krebs** and **Krassnoski**, the statute authorizing attorney fees expressly defines when a prevailing plaintiff is entitled to such fees. Moreover, our Supreme Court's decision in **Hoy** construing § 962(c.2) is controlling herein. The trial court has the discretion to award attorney fees when it determines there has been a violation of the PHRA.

Ms. Huyett contends, however, that **Hoy** did not promulgate a test for determining whether counsel fees should be awarded, and thus, is not

controlling in this regard. She disputes that the trial court is allowed to re-weigh the evidence of a violation in making its determination. She attributes that misconception to the concurring opinion of then-Judge McEwen, and dismisses it as *dicta*. Ms. Huyett maintains that the trial court was bound by the fact finder's finding of discrimination, and that it lacked discretion to weigh the evidence and make its own independent determination of whether the PHRA was violated. In essence, she asserts that attorney fees are mandated or presumptively warranted when the plaintiff prevails.

We disagree. The language of the statute itself addresses the basis on which the trial court may award attorney fees: where the plaintiff prevails and the **trial court** determines there has been a violation. Ms. Huyett's proposed construction of the statute renders this language superfluous. Furthermore, in reviewing whether the trial court abused its discretion in denying counsel fees in *Hoy*, the Supreme Court favorably noted the Superior Court majority's observance that the appellant had received a substantial monetary recovery, and Judge McEwen's concurrence characterizing the violation of the Act as "fairly debatable" and the evidence as "not overwhelming." *Hoy*, *supra*, at 752. It pointed out that, "[t]he trial court weighed the verdict against the evidence and determined, in its discretion, that an award of counsel fees was not appropriate[,]" and the Court found no abuse of discretion. *Id*. However, since the trial court based its denial of attorney fees on its determination that the verdict and punitive

- 13 -

damages were a sufficient recovery for the discrimination suffered, and the Court reversed the substantial punitive damage award, the **Hoy** Court remanded to permit the trial court to reconsider attorney fees in light of that change in circumstances. Upon remand, as Ms. Huyett correctly asserts, the trial court awarded attorney fees.

Our sister court recently relied upon **Hoy** in **Wagner v. Pa. Capitol Police Dep't**, 132 A.3d 1051, 1059 (Pa.Cmwlth. 2016), in holding that there is no presumption of an award of attorney fees and costs to a prevailing plaintiff under the PHRA. In that case, the jury awarded Wagner lost wages but no non-economic damages. Wagner requested, *inter alia*, more than $125,000 in counsel fees and costs. The trial court awarded him attorney fees representing forty percent of the jury's award, based on what it viewed as a lack of evidence of pervasive discrimination and Wagner's failure to submit his fee agreement. The court's calculation also reflected its determination that most of the counsel fees were incurred in pursuing claims upon which Wagner did not prevail. On appeal, the Commonwealth Court found no abuse of discretion.

Herein, a prior panel reversed and remanded to the trial court with the direction to weigh the evidence of a violation in light of the verdict. The trial court herein complied and concluded that the violation of the PHRA was "fairly debatable." Trial Court Opinion, 5/13/16, at (unnumbered page) 3. The court characterized the evidence supporting such a violation as "weak"

- 14 -

and "not overwhelming" and denied attorney fees. *Id*. at (unnumbered page) 4. Hence, the trial court followed our directive and applied the proper legal standard.

Ms. Huyett argues that the trial court's denial of attorney fees is inconsistent with its denial of judgment NOV. She maintains that if the record was legally insufficient to support a violation, the court should have granted judgment notwithstanding the verdict ("JNOV"), which it did not.

Ms. Huyett misapprehends the difference between JNOV and the discretion afforded the trial court to award counsel fees under the PHRA. For purposes of JNOV, the trial court was required to view the evidence in the light most favorable to the verdict winner, Ms. Huyett, and determine whether the evidence was sufficient to support the verdict. Thus, applying that standard, where the testimony of Ms. Huyett and Stephanie Mitchell conflicted with that offered by Mr. Hess and his witnesses, the court was required to credit the testimony of the former. Consequently, the trial court found the evidence legally sufficient to support the verdict, and properly denied JNOV.

The issue herein is not whether the evidence was sufficient to sustain the jury's verdict, but whether the trial court, after engaging in its own, permissible weighing of the evidence, concluded the defendant engaged in a discriminatory practice in violation of the PHRA for purposes of awarding attorney fees. That determination was an exercise of the trial court's

discretion independent of the jury's verdict. Hence, the denial of JNOV and the trial court's rationale for denying counsel fees were not inconsistent.

Ms. Huyett complains that the trial court did not provide any evidentiary support for its conclusion, although it was directed to do so. We do not read this Court's prior directive as requiring the trial court to specify which evidence it found persuasive in arriving at its conclusion. The court relied on the "transcript and evidence in totality." Trial Court Memorandum, 5/17/16, at (unnumbered page) 4. We find no abuse of discretion in this regard.

Ms. Huyett next argues that, based on this Court's earlier decision, the trial court was obligated to accept the jury's ultimate factual determination unless it was "clearly devoid of minimum evidentiary support displaying some hue of credibility, or . . . bears no rational relationship to the supportive evidentiary data." *Huyett*, *supra* at 122 A.3d 1136, n.5, 2015 Pa. Super. Unpub. LEXIS 1832 *7 n.5 (Pa.Super. 2015) (quoting *Krasnov. v. Dinan*, 465 F.2d 1298 (3d Cir. 1972)). We do not view the cited language, which was contained in a footnote, as imposing that standard. Rather, the prior panel merely was referencing the federal appellate standard of review of a district court decision, and noting that federal decisions do not control our determinations.

Ms. Huyett also contends that the trial court erred in basing its decision on the mistaken conclusion that the jury only awarded nominal

recovery or modest damages. Not only was the characterization of the recovery factually inaccurate, she contends that it was irrelevant to the attorney fees determination.

We agree the size of the verdict or its relationship to the amount of attorney fees does not control the fee determination. However, in **Hoy**, the Supreme Court noted that the trial court considered the verdict and the punitive damages award in determining that the appellant had received a sufficient recovery for the discrimination suffered. It viewed the jury verdict as "one factor" to be considered by the court in making the fee determination. **Hoy**, **supra** at 752, n.9. We find no abuse of discretion where the trial court herein merely noted the size of the verdict.

Finally, Ms. Huyett argues that the trial court's denial of attorney fees was the functional equivalent of reversing the jury verdict. She points out that the Pharmacy pursued a counterclaim for slander that was unsupported, forced her to defend against summary judgment, and demanded a jury trial. Although she vindicated an important civil right, received an award of damages for the full amount of the economic loss she suffered and an additional $2,500 for non-economic loss, she was in a far worse financial position after the trial due to the court's refusal to award attorney fees. She maintains that the court's ruling frustrated the jury's intent to make her whole, and further, that she was entitled to be made whole under the remedial PHRA statute.

The PHRA provides explicit guidance to the trial court as to when attorney fees are warranted. As the Supreme Court stated in *Hoy*, the unambiguous terms of a statute cannot be disregarded to pursue its spirit. Since the fee-shifting provision is a discretionary one, the legislature obviously did not contemplate that all successful plaintiffs would automatically recover counsel fees. Had it so intended, the legislature could have so provided. Instead, the legislature left it up to the trial court's discretion to determine whether an award was appropriate.

Ms. Huyett was vindicated in her claim of discrimination and the jury awarded her both economic and non-economic damages. She was not entitled to attorney fees as a matter of right. The fact that her counsel fees exceeded the amount of the damages awarded by the jury has no bearing on our determination whether the trial court abused its discretion in denying those fees.

Upon remand for the determination of attorney fees, the trial court followed this Court's directive. It presided over the trial and had the opportunity to observe the witnesses. Additionally, it reviewed the trial transcript, weighed the evidence, and reached the conclusion that the evidence of a violation of the PHRA was weak. In arriving at that finding, the court stated that it did not reject the jury's credibility determination, but rather independently reweighed the evidence. This is precisely what the PHRA and our Supreme Court's decision in *Hoy* required of the trial court

and the trial court was fully compliant with our earlier directive. Absent herein is any showing that the trial court's decision was manifestly unreasonable or biased or so lacking in support as to be clearly erroneous, and we may not reverse simply because we may have reached a different result.

Judgment affirmed.

Judge Stabile joins the opinion.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2017