J. A21033/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GERARD P. HEIMBECKER, | : | IN THE SUPERIOR COURT OF |
| ADMINISTRATOR, C.T.A., | : | PENNSYLVANIA |
| ESTATE OF HENRY G. HEIMBECKER, | : | |
| A/K/A H. GERARD HEIMBECKER, | : | |
| DECEASED; KATHLEEN D. | : | |
| HEIMBECKER AND | : | |
| THERESA H. SABLOSKY, GUARDIANS | : | |
| OF THE ESTATE OF | : | |
| KATHLEEN HEIMBECKER, | : | |
| AN INCAPACITATED PERSON; | : | |
| KATHLEEN D. HEIMBECKER, | : | |
| INDIVIDUAL; SUSAN M. HEIMBECKER; | : | |
| GERARD P. HEIMBECKER, | : | |
| INDIVIDUAL, | : | |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 3465 EDA 2019 |
| | : | |
| DEAN TREVLYN, M.D., | : | |
| | | |
| Appellee. | | |

Appeal from the Judgment Entered January 6, 2020,
in the Court of Common Pleas of Delaware County
Civil Division at No. 13-5583

BEFORE:  LAZARUS, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED DECEMBER 16, 2020**

Gerard P. Heimbecker, administrator of the Estate of Henry G.

Heimbecker ("decedent"), Kathleen Heimbecker and Theresa H. Sablosky,

Guardians of the Estate of Incapacitated Person, Kathleen D. Heimbecker,

Susan M. Heimbecker and Gerard P. Heimbecker (hereinafter, "appellants")

appeal from the January 6, 2020 judgment entered in favor of Dr. Dean Trevlyn, and against appellants, in this medical malpractice action in the Court of Common Pleas of Delaware County. After careful review, we affirm.

The trial court[1] aptly summarized the facts as follows:

> . . . [T]he [d]ecedent had been at the shore with his family for Memorial Day weekend in 2011. On June 1, 2011, while pulling a cart from the beach the [d]ecedent felt a "tweak in his left shoulder and had a little bit of discomfort." When the pain in his shoulder grew worse and his wrist became swollen, the [d]ecedent called his primary care physician, Dr. Friedrich, who advised the [d]ecedent to take some aspirin and call back the next day. The next day the [d]ecedent called the doctor's office again, and it was suggested that he may have a rotator cuff injury. The [d]ecedent was advised to go see Dr. Trevlyn. The [d]ecedent returned home from the shore on Sunday June 5, 2011 and on Monday June 6, 2011, the [d]ecedent called Dr. Trevlyn and was given an appointment that same day. According to the [d]ecedent's daughter, Susan Heimbecker, Dr. Trevlyn diagnosed the [d]ecedent with gout, gave him a prescription for Indocin for the gout and a prescription for an MRI of his shoulder. A few days later, on June 9, 2011[,] the [d]ecedent was found unresponsive and slumped over in a chair in his bedroom. He was taken by ambulance to Delaware County Hospital where he remained for a few hours before being transferred to Jefferson Hospital. Unfortunately, the [d]ecedent passed away on June 12, 2011.

---

[1] We note that the trial judge, the Honorable Charles B. Burr, II, retired shortly after trial. The case was transferred to the Honorable John J. Whelan, who decided appellants' motion for post-trial relief and authored the Pa.R.A.P. 1925(a) opinion. For ease of discussion, we will refer to the post-trial court as the trial court.

. . . Appellants offered Dr. Steven Graboff, an expert in orthopedic medicine, who opined that Dr. Trevlyn was negligent and breached the standard of care. According to Dr. Graboff, when the [d]ecedent presented in Dr. Trevlyn's office complaining of shoulder pain and a swollen wrist, the standard of care required Dr. Trevlyn to emergently admit the [d]ecedent to the hospital and have him seen by internal medicine and infectious disease doctors. Dr. Graboff opined that Dr. Trevlyn misdiagnosed the [d]ecedent's wrist as having gout as opposed to an infection and opined that he should have begun immediate treatment as though the wrist was infected "because that could potentially kill him." According to Dr. Graboff, the [d]ecedent had a wrist infection that got into his blood and ultimately killed him.

. . . Dr. Trevlyn recounted that the [d]ecedent came to see him on June 6, 2011. The [d]ecedent explained that he had been pulling a beach cart and had felt a pull in his left shoulder. The [d]ecedent further explained that after that the pain increased to a point that he was having trouble moving his shoulder and that he had also developed pain and swelling in his left hand. Dr. Trevlyn examined the [d]ecedent and found that he presented with a likely rotator cuff tear in his shoulder, and an MRI was ordered. Dr. Trevlyn also examined the [d]ecedent's wrist, which was swollen and warm. Dr. Trevlyn found that he presented with gout. Dr. Trevlyn opined, "[t]hen I looked into his medical history. He has a history -- he's an older man. He has a history of hypertension. He has a history of diabetes. He has a history of high cholesterol. He's on certain medications. And all these things are risk factors for gout. I know based on my training and my experience that the most common cause of a warm, red, swollen, painful wrist is gout. That day I made the diagnosis of gout based on that." Accordingly, Dr. Trevlyn treated the gout with medication and told the [d]ecedent to follow up with him if the pain persisted over the next one to two days. Dr. Trevlyn explained that the [d]ecedent did not have any signs of an infection, such as a cut or open sore. As to the cause of the [d]ecedent's death,

Dr. Trevlyn explained that it was his understanding that the autopsy did not show that the wrist contributed to the [d]ecedent's death. According to Dr. Trevlyn, the [d]ecedent died of bacterial endocarditis.

In addition, Dr. Trevlyn called two experts in his defense, Dr. John Lewis Esterhai and Dr. Peter McCue. Both doctors testified that based upon their training and experience they were of the opinion to a reasonable degree of medical certainty that Dr. Trevlyn's treatment of the [d]ecedent met the standard of care, and they stated that Dr. Trevlyn was not negligent. Dr. Esterhai, an expert in the field of orthopedic surgery, opined that the [d]ecedent had an infection on his heart valve that showered into his blood stream and ultimately caused his death. According to Dr. Esterhai, "Dr. Trevlyn did not contribute to this patient's death. It is unfortunate that he had endocarditis that became bacterial endocarditis that then showered his bloodstream and his brain and likely his heart with bacteria. But that was not in any way, shape or form something that Dr. Trevlyn had any knowledge of, could have known about or could have made any difference in."

Dr. Esterhai stated that a review of the records showed that the [d]ecedent did not have a wrist infection, but merely had inflammation of the wrist. He explained that inflammation and infection are not synonymous. . . . According to Dr. Esterhai, gout was the proper diagnosis based upon the [d]ecedent's presentation and his risk factors.[Footnote 2]

> [Footnote 2] Dr. Esterhai testified that the [d]ecedent had six risk factors for gout.

Dr. McCue, an expert in the areas of anatomic pathology neuropathology and clinical pathological causes of death, testified that he reviewed the [d]ecedent's medical records and autopsy report and concluded that the [d]ecedent suffered from bacterial endocarditis. Dr. McCue explained that the bacterial endocarditis that affected the [d]ecedent's heart

valves spread to his brain and eventually caused him to lose function in his brain, and lose function in his heart, and that "he just died."

Dr. McCue explained that the medical records, which showed no joint destruction, ruled out an infection of the [d]ecedent's wrist. He explained that bacterial endocarditis is a destruction of the heart valve, and that it had been sitting there for weeks and did not arise over the course of the five days following the [d]ecedent's visit to Dr. Trevlyn. Dr. McCue explained that had the wrist had an infection that contributed to the [d]ecedent's death it would have been noted on the final diagnosis of the autopsy report.

Trial court Rule 1925(a) opinion, 2/25/20 at 1-5 (citations to record omitted).

On November 15, 2018, a jury rendered its verdict in favor of Dr. Trevlyn. Appellants filed a motion for post-trial relief on November 26, 2018.[2] The trial court denied the motion on November 8, 2019. Appellant timely filed a notice of appeal on December 6, 2019. The trial court ordered appellants to file a Pa.R.A.P. 1925(b) statement, which they filed on December 30, 2019.

The record reflects that on December 27, 2019, this court entered an order directing appellants to praecipe the trial court prothonotary to enter judgment and file with the prothonotary of this court, within ten days, a certified copy of the trial court docket reflecting the entry of judgment in order

---

[2] The tenth day following the verdict fell on a Sunday. Accordingly, appellants' motion for post-trial relief was timely filed on Monday November 26, 2018. *See* 1 Pa.C.S.A. § 1908 (providing whenever last day of a period of time referred to in a statute falls on Saturday, Sunday, or legal holiday such day is omitted from computation).

to comply with Pa.R.A.P. 301, which sets forth the requirements for a final appealable order. (*See* order of court, 12/27/19.) This court further ordered that when appellants complied with Rule 301, this court would treat appellants' previously filed notice of appeal as filed after the entry of judgment. Appellants timely complied. The record reflects that judgment was entered in favor of Dr. Trevlyn on January 6, 2020. By order entered January 8, 2020, this court discharged its December 27, 2019 order. The trial court filed its Rule 1925(a) opinion on February 25, 2020.

Appellants raise the following issues on appeal:

[1]. [Whether as] a matter of law and an abuse of discretion, the trial court erred in failing to grant [] appellants' motion for judgment notwithstanding the verdict and, in the alternative, motion for a new trial[?]

[2]. [Whether as] a matter of law and an abuse of discretion, the trial court erred in [sic] when it precluded the testimony of [] appellants' two expert witnesses which prejudiced [] appellants' case[?]

[3]. [Whether as] a matter of law and an abuse of discretion, the trial court erred in precluding the admission of [] appellants' three (3) minute video which prejudiced [] appellants' case[?]

[4]. [Whether as] a matter of law and an abuse of discretion, the trial judge's behavior, both on and off the record, demonstrated prejudice to [] appellants. Consequently, [] appellants' motion for the new trial should have been granted[?]

Appellants' brief at iv (extraneous capitalization omitted).

Appellants first contend the trial court erred in failing to grant their motion for judgment notwithstanding the verdict or a new trial. As to each motion, appellants' argue the verdict was against the weight of the evidence. (**See id.** at 17, 18.) Appellants maintain that the undisputed testimony established that Dr. Trevlyn breached the standard of care with respect to the decedent. (**Id.** at 18.)

We recognize the following standard of review with regard to ruling on a motion for judgment notwithstanding the verdict:

> We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.
>
> There are two bases upon which a judgment [notwithstanding the verdict] can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

**United Environmental Group, Inc. v. GKK McKnight, LP**, 176 A.3d 946, 959 (Pa.Super. 2017) (citation omitted). "For purposes of JNOV [judgment notwithstanding the verdict], the trial court [is] required to view the evidence in the light most favorable to the verdict winner . . . and determine whether

the evidence was sufficient to support the verdict." *Huyett v. Doug's Family Pharmacy*, 160 A.3d 221, 229 (Pa.Super. 2017), *appeal denied*, 172 A.3d 1116 (Pa. 2017). "The propriety of a JNOV is a question of law, and therefore, our scope of review is plenary." *Corvin v. Tihansky*, 184 A.3d 986, 990 (Pa.Super. 2018) (citation omitted).

In reviewing the trial court's denial of a new trial, we apply the following standard of review:

> We will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion. We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.

*Bowman v. Rand Spear & Assoc., P.C.*, 234 A.3d 848, 865 (Pa.Super. 2020) (citation omitted). "A new trial is granted only where the verdict is so contrary to the evidence as to shock one's sense of justice, not where the evidence is conflicting or where the court might have reached a different conclusion on the same facts." *Braun v. Target Corp.*, 983 A.2d 752 760 (Pa.Super. 2009) (citation omitted), *appeal denied*, 987 A.2d 158 (Pa. 2009). "[W]hen reviewing the denial of a motion for new trial, we must

determine if the trial court committed an abuse of discretion or error of law that controlled the outcome of the case." ***Estate of Hicks v. Dana Companies, LLC***, 984 A.2d 943, 951 (Pa.Super. 2009) (***en banc***), ***appeal denied***, 19 A.3d 1051 (Pa. 2011) (citations omitted).

Further, in a medical malpractice action:

> When the alleged negligence is rooted in professional malpractice, the determination of whether there was a breach of duty comprises two steps: first, a determination of the relevant standard of care, and second, a determination of whether the defendant's conduct met that standard. Furthermore, to establish the causation element in a professional malpractice action, the plaintiff must show that the defendant's failure to exercise the proper standard of care caused the plaintiff's injury.

***Freed v. Geisinger Medical Center***, 910 A.2d 68, 72 (Pa.Super. 2006) (citations omitted).

Here, the trial court found as follows:

> Based upon the evidence presented at trial, and despite [a]ppellants' arguments to the contrary, it was both reasonable and logical for the jury to conclude that Dr. Trevlyn was not negligent. When viewing the evidence in the light most favorable to the defense, both Dr. Esterhai and Dr. McCue testified that they did not find that Dr. Trevlyn breached the standard of care. In fact, Dr. Esterhai testified that he would have come to the same diagnosis had the [d]ecedent presented to him with the same symptoms he showed on June 6, 2011. Despite the fact that [a]ppellants' expert[,] Dr. Graboff[,] concluded that Dr. Trevlyn was negligent and did contribute to the [d]ecedent's death[,] the jury was free to disbelieve this testimony. It is evident from the verdict that jury found that Dr. Trevlyn's conduct did not fall beneath the standard or care. The jury chose to believe the experts

> presented by [Dr. Trevlyn] – which [sic] opined that the [d]ecedent died of bacterial endocarditis – which had nothing to do with the ailment in his wrist that presented during his visit to Dr. Trevlyn's office. . . .
>
> [Furthermore, s]everal experts testified regarding Dr. Trevlyn's treatment of the [d]ecedent on June 6, 2011. Dr. Graboff testified at length that he believed that Dr. Trevlyn misdiagnosed the [d]ecedent and should have treated him for an infection of his wrist. Drs. Esterhai and McCue refuted this theory. For example, Dr. Esterhai testified at trial[,] to a reasonable degree of medical certainty[,] that Dr. Trevlyn did not contribute to the patient's death. While he lamented that it was unfortunate that the [d]ecedent "had endocarditis that became bacterial endocarditis that then showered his bloodstream and his brain and likely his heart with bacteria, it was not in any way shape or form something that Dr. Trevlyn had any knowledge of or could have known." **See** [notes of testimony], 11/14/18 [at] 140. As noted . . . . the credibility and weight given to this expert opinion was for the jury to decide. **See Casselli v. Powland**, 937 A.2d 1137, 1139 (Pa.Super. 2007); **Lykes v. Yates**, 77 A.3d 27, 32 (Pa.Super. 2013).

Trial court Rule 1925(a) opinion, 2/25/20 at 9-10. The trial court found that the verdict rendered in this case was not against the weight of the evidence, and appellants were not entitled to a JNOV or a new trial. (**Id.**)

We find the trial court comprehensively addressed this claim and adopt its well-reasoned analysis as our own. The jury concluded that Dr. Trevlyn's treatment was not the cause of the decedent's death. Further, our review of the record reveals that neither the Anatomic Autopsy Report of July 18, 2011, prepared by Dr. John L. Farber of Jefferson University Hospital, the Neuropathology Autopsy Report of September 9, 2011, prepared by Dr. Mark

T. Curtis, nor the decedent's death certificate reference decedent's wrist or any infection originating therefrom. (**See** appellants' trial exhibits P-12, P-13.) Accordingly, we find no error or abuse of discretion by the trial court's denial of appellants' post-trial motion for JNOV or a new trial.

In their second issue, appellants contend the trial court erred in precluding the testimony of Dr. David L. Dorsky, an infectious disease expert, and Dr. Hervey S. Sicherman, an orthopedic surgeon, two of appellants' proposed experts. (**See** post-trial opinion, 2/25/20 at 11-12.) Prior to trial, Dr. Trevlyn filed motions **in limine** to preclude their testimony, which the trial court granted on November 9, 2018.[3] Appellants claim that these doctors:

> would have testified [Dr.] Trevlyn deviated from the standard of care by failing to perform routine diagnostic tests that would have ruled out the presence of an infection; that [Dr.] Trevlyn should have determined whether or not [decedent] had a fever; that [Dr.] Trevlyn should have performed an arthrocentesis of the inflamed wrist, and he should have performed laboratory studies that would have included a complete blood count. The failure of the trial court to allow the jury to hear the testimony of both doctors prejudiced the appellants' case.

Appellants' brief at 23 (citations to reproduced record omitted).

A trial court's decision to grant or deny a motion **in limine** is subject to an evidentiary abuse of discretion standard of review. **Dibish v. Ameriprise Financial, Inc.**, 134 A.3d 1079, 1095 (Pa.Super. 2016) (citation omitted),

---

[3] Dr. Trevlyn's motion **in limine** to preclude the testimony of appellants' expert, Dr. Steven Graboff, was denied.

*appeal denied*, 141 A.3d 481 (Pa. 2016). Our standard of review with regard to the admission or exclusion of expert testimony is that "[t]he admission of expert testimony is within the trial court's sound discretion and we will not disturb that decision without a showing of manifest abuse of discretion." *Whitaker v. Frankford Hosp. of City of Philadelphia*, 984 A.2d 512, 522 (Pa.Super. 2009) (citation omitted).

> An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Catlin v. Hamburg*, 56 A.3d 914, 920 (Pa.Super. 2012) (citations omitted), *appeal denied*, 74 A.3d 124 (Pa. 2013).

In determining whether the opinion testimony of an expert witness in a medical malpractice case is admissible, "the testimony must be rendered within a reasonable degree of medical certainty. The trial court must look to the substance and the entirety of the testimony in order to determine whether it meets this standard." *Winschel v. Jain*, 925 A.2d 782, 794 (Pa.Super. 2007) (citation omitted), *appeal denied*, 940 A.2d 366 (Pa. 2008).

> An expert witness proffered by a plaintiff in a medical malpractice action is required to testify to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered. However, expert witnesses are not required to use magic words

when expressing their opinions; rather, the substance of their testimony must be examined to determine whether the expert has met the requisite standard.

***Tillery v. Children's Hosp. of Philadelphia***, 156 A.2d 1233, 1240 (Pa.Super. 2017) (citation omitted), ***appeal denied***, 172 A.3d 592 (Pa. 2017). However, "an expert fails this standard of certainty if he testifies that the alleged cause 'possibly', or 'could have' led to the result, that it 'could very properly account' for the result, or even that it was 'very highly probable' that it caused the result." ***Rolon v. Davies***, 232 A.3d 773, 777 (Pa.Super. 2020) (citation omitted).

We first consider whether the trial court correctly excluded the expert opinion testimony of Dr. Dorsky. Our review of Dr. Dorsky's January 21, 2016 report reveals the following:

> [I]t is **more likely than not** that [the decedent] developed bacterial endocarditis as a consequence of the spread of the infection from his wrist to his heart via the bloodstream.
>
> On June 9, 2011 [the decedent] suffered an embolic stroke that was the proximal cause of his death. The embolic stroke **was more likely than not** a complication of his having bacterial endocarditis involving his aortic valve. **More likely than not** there had been vegetation on his aortic valve due to the endocarditis, and it is **more likely than not** that the vegetation broke away from the valve and traveled through the bloodstream to his brain, causing the stroke.
>
> The failure of Dr. Trevlyn and the improper diagnosis of gout increased the risk of harm, including death, to [the decedent].

Dr. Dorsky's report, 1/21/16 at 2 (emphasis added).

Based on the above language, we find that Dr. Dorsky's expert opinion was not expressed with the requisite degree of medical certainty. Thus, the trial court did not abuse its discretion in excluding Dr. Dorsky's testimony. (***See*** notes of testimony, 11/9/18 at 119, 138-145.)

Appellants further contend the trial court erred in precluding the testimony of Dr. Sicherman. Initially, we note that although appellants specifically objected to the exclusion of Dr. Dorsky's testimony,[4] they did not object to the exclusion of Dr. Sicherman's testimony.

> It is axiomatic that [i]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal, we will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated. In this jurisdiction one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

***State Farm Mut. Auto. Ins. Co. v. Dill***, 108 A.3d 882, 885 (Pa.Super. 2015), ***appeal denied***, 116 A.2d 605 (Pa. 2015). Thus, any issue regarding the exclusion of Dr. Sicherman's testimony was not properly preserved for appeal. ***See also Trigg v. Children's Hospital of Pittsburgh of UPMC***, 229 A.3d

---

[4] ***See*** notes of testimony, 11/9/18 at 157.

260, 269 (Pa. 2020); Pa.R.A.P. 302(a) ("Issues not raised in the trial court cannot be raised for the first time on appeal.").

Even had appellants properly preserved this issue, it would not merit relief. In his report of March 29, 2016, Dr. Sicherman opines:

> It is my opinion that Dr. Trevlyn deviated from the standards of accepted care in his treatment of [the decedent]. . . . If Dr. Trevlyn had obtained these appropriate studies, **it is more probable than not** that the patient would have been diagnosed as having had an infection and would have received more immediate and appropriate treatment. . . .
>
> Again, if Dr. Trevlyn had performed appropriate diagnostic studies, **it is more probable than not** that a diagnosis of septic arthritis would have been made earlier and more likely than not appropriate treatment would have started which would markedly have diminished [the decedent]'s chance of developing diffuse sepsis with embolic stroke which led to his death.
>
> All of my opinions have been expressed within a reasonable degree of medical **probability** and certainty.

Dr. Sicherman's report, 3/29/16 at 2 (emphasis added). Thus, Dr. Sicherman's expert opinion was not expressed with the requisite degree of medical certainty.

The trial court further found Dr. Sicherman's testimony duplicative of appellants' other medical expert, Dr. Steven Graboff.

> [T]his [trial] court submits there was no abuse of discretion in excluding the testimony of Dr. Sicherman, whose testimony would have been duplicative of Dr. Graboff. Dr. Graboff testified at length as to the issues of liability and causation at

- 15 -

> trial. The record reflects that Drs. Dor[sk]y and Sicherman would have offered similar if not identical opinions to Dr. Graboff. Accordingly, this [trial] court submits that [a]ppellants were in no way prejudiced by Judge Burr's rulings.

Trial court Rule 1925(a) opinion, 2/25/20 at 13. Further, Pennsylvania Rule of Evidence 403 provides that a trial "court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: . . . needlessly presenting cumulative evidence." Pa.R.E. 403. **See Flenke v. Huntington**, 111 A.3d 1197, 1202 (Pa.Super. 2015) (stating cumulative evidence properly excluded under Pa.R.E. 403). Thus, we also discern no error or abuse of discretion in the trial court's precluding the expert testimony of Dr. Sicherman. Appellants' second issue does not, therefore, merit relief.[5]

The third issue presented is that the trial court erred in precluding appellants from "showing [] a three (3) minute video demonstrating the vibrancy of the decedent's life prior to seeing [Dr.] Trevlyn on June 6, 2011," thereby prejudicing appellants. (Appellants' brief at 28.) Appellants further assert that "to the extent that a videotape of the decedent is relevant as to damages, it should have been admitted as evidence." **Id.** at 30, citing to

---

[5] We note there is no support for appellants' claim that they were prejudiced because they fail to explain how the testimony of Drs. Dorsky and Sicherman differed from appellants' other medical expert, Dr. Graboff, who did testify. Rather, appellants assert "there is no unfair prejudice to [Dr. Trevlyn] merely because the testimony is effective and it should have been admitted." (Appellants' brief at 28.)

***Quinby v. Plumsteadville Family Practice***, 907 A.2d 1061, 1065-1066 (Pa.

2006). We disagree.

Our standard of review of evidentiary rulings is as follows:

> Questions regarding the admissibility or exclusion of evidence are also subject to the abuse of discretion standard of review. Pennsylvania trial judges enjoy broad discretion regarding the admissibility of potentially misleading and confusing evidence. Relevance is a threshold consideration in determining the admissibility of evidence. A trial court may, however, properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Generally[,] for the purposes of this evidentiary rule, "prejudice" means an undue tendency to suggest a decision on an improper basis. The erroneous admission of harmful or prejudicial evidence constitutes reversible error.

***Rohe v. Vinson***, 158 A.3d 88, 95 (Pa.Super. 2016), ***appeal denied***, 176

A.3d 851 (Pa. 2017). "Unfair prejudice supporting exclusion of relevant

evidence means a tendency to suggest decision on an improper basis or divert

the jury's attention away from its duty of weighing the evidence impartially."

***Lageman by and through Lageman v. Zepp***, 237 A.3d 1098, 1116

(Pa.Super. 2020) (citation omitted).

Here, the trial court aptly addressed this issue as follows:

> In the instant case, before they rested, [a]ppellants' counsel move to present a three (3) minute video of "a series of photographs that are orchestrated or choreographed to music along with texts and some voice over top of it." [Notes of testimony], 11/14/18 [at] 4[7]. Defense counsel objected, claiming that the video was prejudicial and was being offered merely to elicit sympathy from the jurors. ***Id.*** at 47-48. The trial court agreed and found that "the risk of prejudice

> of overdoing the sympathy outweighed any probative value of it" and granted defense counsel's objection to the showing of the tape. ***Id.*** at 49.
>
> This [trial] court sees no abuse of discretion in the trial court's ruling. The proffered video evidence by [a]ppellants was more prejudicial than probative in this case. Appellants called two of [d]ecedents' daughters, his son, and his grandson to testify at trial about the [d]ecedent. The video, which was described as an "in memoriam" video, was very likely to elicit sympathy for the [d]ecedent and his family and was inadmissible. Accordingly, because the probative value of the video was outweighed by a danger of unfair prejudice, it was properly excluded.

Trial court Rule 1925(a) opinion, 2/25/20 at 14.

Furthermore, appellants' reliance on ***Quinby v. Plumsteadville Family Practice, Inc.***, 907 A.2d 1061 (Pa. 2006), to support their claim that the video was relevant to damages, is misplaced. In ***Quinby***, our supreme court, agreeing with this court, found that Quinby was entitled to JNOV on the issue of liability for negligence in a survival action. The case was remanded for trial on the issue of damages. Thus, our supreme court ruled that to the extent the videotape evidence proffered by Quinby, and partially disallowed by the trial court, was relevant to the issue of damages, the videotape evidence was admissible. Instantly, however, the jury found for Dr. Trevlyn and, therefore, the issue of damages is irrelevant.

As we agree with the well-reasoned analysis of the trial court on this issue, we adopt its reasoning. Appellants' contention that the trial court erred in precluding the admission of the videotape of the decedent is without merit.

In their final issue, appellants claim, "[a]s a matter of law and an abuse of discretion, [that the] trial judge's behavior, both on and off the record, demonstrated prejudice to the [a]ppellants[, and c]onsequently," a new trial should have been granted.  (Appellants' brief at 30.)  Appellants identify the following examples:  (1) "obnoxious [sidebar] comments by the trial court"; (2) "unnecessary drama regarding a snow fall"; (3) "[a]t times it became apparent that control of the courtroom was in the hands of the junior defense attorney"; (4) the charge to the jury was confusing; and (5) the trial judge's alleged acute back pain caused him to constantly rise, stretch and walk around while witnesses were testifying.  (**See** appellants' brief at 32-34.)

Here, appellants failed to raise objection to any of the alleged conduct of the trial court during trial.  **See** Pa.R.A.P. 302(a), **supra**. Nor have appellants cited case law in support of their contentions.  **See In re Estate of Whitley**, 50 A.3d 203, 209-210 (Pa.Super. 2012) (noting that the argument portion of the appellate brief must contain a discussion and citation of pertinent authorities and failure to cite relevant legal authority constitutes waiver of the claim on appeal), **appeal denied**, 69 A.3d 603 (Pa. 2013); Pa.R.A.P. 2101, 2119(b). Thus, we agree with the trial court and find appellants have waived their final issue. We, therefore, affirm the judgment entered January 6, 2020.

Judgment affirmed.

J. A21033/20

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* <u>*12/16/2020*</u>